## GRANVILLE S. INGRAHAM *et al.*

### *v.*

## CHARLES O. WHITMORE *et al.*

1. SALE — *constructive delivery.* Where a broker who had taken an
order of the defendants for sugars of his principals who were doing busi-
ness in the east, gave the defendants an order upon a railroad company for
twenty-five barrels of sugar just before the great fire in Chicago, the
court declined to express any opinion whether the giving of such order
would operate as a delivery so as to pass the property and place it at the
purchasers' risk, but *held* that no recovery could be had for the price in the
absence of proof that the vendors had any sugar in the custody of the
carrier at the time, or that any sugar shipped by them had been in fact
destroyed by the fire.

2. ARBITRATION — *when submission is by parol both parties must agree to
abide the award.* The rule is, in case of a parol submission to arbitration,
that it is necessary to prove not only that both parties promised to abide by
the award, but that the promises were concurrent and mutual, for other-
wise each promise is but a *nudum pactum.*

3. SAME — *agent or broker has no power to submit to arbitration.* A mere
broker or commission merchant to make sales for his principal has no

authority by virtue of his agency to make any submission to arbitration that will be binding on his principal.

4. SAME — *action for breach of agreement to abide award.* An action for the breach of an agreement to abide the award of arbitrators cannot be maintained, unless it appears that the defendant has in some way revoked the submission, and when the submission is not binding for want of mutuality no action will lie for a breach of the agreement.

5. SAME — *right to hearing before umpire.* An umpire chosen to decide in case of disagreement of the arbitrators, having the right to make an award without either of the arbitrators joining with him, in the absence of any agreement or assent of the parties dispensing with a full hearing by him, it is his duty to hear the whole case and to make a distinct award thereon as the result of his judgment. In such a case, if he decides the case without a hearing, simply on the statements of the arbitrators, his award will be void.

6. SAME — *ex parte hearing without notice.* The doctrine is well settled that when an arbitrator proceeds entirely *ex parte,* without giving the party against whom the award is made any notice of the proceeding under the submission, the award is void, and it is not necessary to show corruption on the part of the arbitrator.

7. SAME — *requisites of award — finality and certainty.* It is essential to the validity of an award that it should make a final disposition of the matters embraced in the submission, so that they may not become the subject or occasion of future litigation, and the law requires certainty to a common intent in the award.

8. SAME — *certainty of award.* On the submission of the liability of the defendant on an alleged sale and constructive delivery of twenty-five barrels of sugar, to arbitration, the umpire awarded that the facts were sufficient to constitute a customary delivery of the sugar, but failed to show the amount of the sugar or the price to be paid by the defendant, or give any data from which the same could be ascertained by computation: *Held,* that the award was void for uncertainty.

APPEAL from the Superior Court of Cook county; the Hon. WILLIAM A. PORTER, Judge, presiding.

This was an action of assumpsit brought by Charles O. Whitmore and Charles J. Whitmore, partners, doing business under the name and style of Whitmore & Son, against Granville S. Ingraham, Calvin R. Corbin and Horatio N. May, partners, doing business under the name and style of Ingraham & Co.

Whitmore & Son, being residents and doing business as wholesale dealers in sugars in the city of Boston, had employed the house of J. H. Dunham & Co., Chicago, as their brokers and commission merchants, for receiving orders for sugars in the latter city. The course of business on the part of the brokers was to send around to the wholesale grocers in Chicago, a clerk with samples and solicit orders; the brokers having no authority to fix prices, but received offers which were submitted by telegram to their principals in Boston. Ingraham, Corbin & May being wholesale grocers in Chicago, were called upon about October 6, 1871, by Dunham's clerk with samples of sugar offered on behalf of the Whitmores, and Mr. Corbin, of the firm of Ingraham & Co., made an offer of $10\frac{1}{4}$ cents per pound for 25 barrels of sugar of brand known as circle C. Dunham's agent representing that the Whitmores had sugars in transit between Boston & Chicago, submitted the proposition by wire to the principals for acceptance or rejection. The case shows no notice by Dunham & Co. to Ingraham & Co. of acceptance of the proposition, except that it is claimed by Dunham & Co. that on Friday before the great fire of Oct. 8 and 9, 1871, they sent an order to Ingraham & Co. upon the Mich. Cent. R. R. Co. for 25 bbls. of sugar. The receipt of such order was denied by Ingraham & Co., and the latter did not in fact receive any part of the sugar in question. Nor was there any evidence tending to show that any portion of a consignment of sugar from Whitmore & Sons was, in fact, destroyed by the fire referred to; but assuming that it was, Dunham & Co. after the fire made claim, in behalf of Whitmore & Son, of Ingraham & Co. for payment at the rate of $10\frac{1}{4}$ cents per pound for 25 barrels, though no evidence was given of the number of pounds these barrels contained when they arrived, if they ever did, at Chicago. Ingraham & Co. denying all liability to pay for the sugars, refused to recognize the claim, and were thereupon pressed by Dunham & Co. to submit the matter to arbitration. J. H. Dunham, having no authority to bind Whitmore

& Son by his submission, chose W. C. D. Grannis as one of the arbitrators, and sent the following communication:

"CHICAGO, 30th January, 1872.

"MESSRS. INGRAHAM, CORBIN & MAY:

"Having selected for Messrs. C. H. Whitmore & Son, W. C. D. Grannis, Esq., as their referee in the question of difference between them and you, with reference to the payment for the sugars sold you previous to the late fire, you will please advise me who you have selected as your referee, also when and where they will meet to hear the proof and determine the question; the two so selected failing to agree, they to choose a third person.

"Very respectfully yours,

"J. H. DUNHAM."

The evidence tends to show that Ingraham & Co. acceded to Dunham's proposition and selected one W. O. George. The parties appeared before these arbitrators and their respective statements were made, but neither the arbitrators nor any witnesses were sworn. These two failing to agree, they chose as umpire C. H. Beckwith. Intervening the disagreement of the two arbitrators and any action of the umpire, Corbin, one of the firm of Ingraham & Co., notified the arbitrators that he wished to be heard and introduce testimony before the umpire. No notice having been given, the umpire, taking the statements of the two arbitrators who did not agree as to the facts, and without any opportunity having been given to Ingraham & Co. made his award as follows:

CHICAGO, February 2d, 1872.

The case of the delivery of sugars by a broker to certain parties (names not given) by proof of delivery of a written order to receiving or shipping clerk of the buyers, and his attention called to it. Also, on the other hand, contended that the said receiving or shipping clerk has no recollection of the receipt or delivery of such a notice, and all the attending circumstances

28      INGRAHAM *et al. v.* WHITMORE *et al.*    [Sept. T.

Opinion of the Court.

and customs concerning the delivery of such notice being mutually submitted to me by Messrs. Grannis and George, I hereby consider such proof of notice given as represented on Friday, Oct. 6, to be sufficient, and to constitute a customary delivery of said goods, and would also consider that they were therefore the property of, and at the risk of, the buyers.

Names afterward given me, and I still consider that order, as delivered by Mr. Briggs, as a delivery to Messrs. Ingraham, Corbin & May.

(Signed)      C. H. BECKWITH.

Messrs. WILLIAMS & THOMPSON, for the appellants.

Messrs. HAWES & LAWRENCE, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The evidence is wholly insufficient to sustain the verdict upon the count for goods sold and delivered. No actual delivery is pretended. A constructive delivery is relied upon, arising out of the alleged delivery by Dunham & Co., to the defendants, of an order upon the railroad company for twenty-five barrels of sugar. This order, it is said, was upon the Michigan Central R. R. Co. It might as well have been any other company having a freight depot in Chicago, because there is no evidence tending to show that, at the time the alleged order was given, the company to whom it was directed had any sugar in their custody under any shipment from the plaintiffs. Nor is there any evidence in the case tending to show that any sugar which plaintiffs had shipped, or had any connection with, was in fact destroyed in the great fire, October 9, 1871.

We express no opinion upon the question whether the mere giving such an order would operate as delivery so as to pass the property to the buyer and place it at his risk, because it is clear it could have no such effect, unless the goods were, at the time, in the custody of the carrier at Chicago, and ready to be delivered. There is a further difficulty. There was no evi-

dence tending to show how many pounds of sugar would be contained in the supposed twenty-five barrels on their arrival at Chicago, assuming that they had arrived.

The next question in order is, whether a cause of action was shown under any of the three counts upon the alleged breach of a parol promise to abide and perform the award of the umpire, Beckwith. The court is of opinion there was not. This was a submission by parol, notwithstanding Dunham made a proposition in writing. No writing was executed by the defendants. The rule is, that if the submission was by parol it is material to prove, not only that both parties promised to abide by the award, but that the promises were concurrent and mutual; for otherwise each promise is but *nudum pactum.* 2 Greenl. Ev. sec. 73; *Keep* v. *Goodrich,* 12 Johns. R. 397; *Kingston* v. *Phelps,* Peake's Cas. 227.

Dunham was the mere broker or commission merchant of plaintiffs. He had no authority from his agency to make any submission that would be binding upon his principals. At the time he selected Grannis as arbitrator, he had no color of authority to bind plaintiffs. Letters were received subsequently in reference to it, but they were not written by any member of the firm of plaintiffs, and the writer's authority in the premises was not shown. It did not appear even that he was a clerk. Dunham claimed, upon the trial, to have received another letter authorizing him to submit the matter to arbitration. But, upon being specifically asked, he said he did not know by whom it was written. In any view we can take of the evidence, it fails to prove that plaintiffs were legally bound by the submission.

The action for breach of an agreement to abide the award of arbitrators cannot be maintained, unless it appears that the defendants have, in some way, revoked the submission. *Marshall* v. *Reed,* 48 N. H. 36, and cases there cited.

There is no allegation of revocation in either of the counts, or proof of such revocation in the record, and if the plaintiffs were not bound by the submission made by Dunham, the award is not, for that reason, binding and conclusive upon them.

Therefore the action for breach of the agreement cannot be maintained. This objection also ·lies to a recovery on the count upon the award itself, which is subject to still other objections.

The original claim of the plaintiffs, so far as this record shows, was destitute of merits ; and the manner in which the proceeding inaugurated by Dunham resulted in the award in question, seems very much like a snap-judgment.

The original arbitrators were occupied only about 40 minutes in receiving statements, which were without oath, and coming to a disagreement. As soon as the disagreement became known, Corbin, one of the defendants, explicitly informed these arbitrators that he desired to be heard and to introduce evidence before the umpire, and he was assured by them that the umpire should be so notified. No notice, however, was given to defendants when the hearing would take place before the umpire, and they were not present or represented.

In *Haven* v. *Winnisimet Company*, 11 Allen, 384, the court, by BIGELOW, C. J., said : " An umpire is a person whom two arbitrators, appointed and duly authorized by parties, select to decide the matter in controversy, concerning which the arbitrators are unable to agree. His province is to determine the issue submitted to the arbitrators on which they have failed to agree, and to make an award thereon, which is his sole award. Neither of the original arbitrators is required to join in the award in order to make it valid and binding on the parties. In the absence of any agreement or assent by the parties to the controversy, dispensing with a full hearing by the umpire, it is his duty to hear the whole case, and to make a distinct award thereon as the result of his judgment. He stands, in fact, in the same situation as a sole arbitrator, and he is bound to hear and determine the case in like manner as if it had been originally submitted to his determination."

We fully concur in these views, and, in analogy to the settled principles applicable to all judicial proceedings, it follows that the defendants were entitled to notice and opportunity for a

hearing before the umpire, there being nothing in the terms of submission tending to waive that right. *Daniel* v. *David*, 6 Dana, 93; *Small* v. *Courtney*, 1 Brev. (S. C.) 205; *Taber* v. *Jenny*, Sprague, 315; *Thornton* v. *Chapman*, 2 Cranch, C. Ct. R. 244; *Walker* v. *Walker*, 28 Geo. 140; *Falconer* v. *Montgomery*, 4 Dall. 232; *Passmore* v. *Petit*, ib. 271.

The doctrine is well established that where an arbitrator proceeds entirely *ex parte*, without giving the party against whom the award is made any notice of the proceeding under the submission, the award is void, and it is not necessary to show corruption on the part of the arbitrator. *Elmendorf* v. *Harris*, 23 Wend. 628; *Lutz* v. *Lithicum*, 8 Peters, 178, and authorities cited.

The law requires certainty to a common intent in an award. The want of such certainty is a defense. 2 Greenl. Ev., sec. 78, and cases in notes. In *Waite* v. *Barry*, 12 Wend. 377, the court said: "It is essential to the validity of an award, that it should make a final disposition of the matters embraced in the submission, so that they may not become the subject or occasion of future litigation between the parties. It is not indispensable that the award should state, in words or figures, the precise amount to be paid. If nothing remain to be done, in order to render it certain and final, but a mere ministerial act or arithmetical calculation, it will be good."

In *McDonald* v. *Bacon*, 3 Scam. 431, this court said: "The award must be certain to a common intent, capable of being understood and carried into specific execution, without the aid of extraneous circumstances." Referring to Kyd on Awards, 183, 191; Watson on Pl. 117, 119.

It is impossible to ascertain, from any thing appearing upon the face of the award, in the terms of the submission, or from any thing in the proceeding upon the submission, what specific amount was to be paid by the defendants. Indeed, if resort be had to extraneous circumstances, which would be improper, it would be difficult to ascertain how many pounds were comprised in 20 barrels of sugar, after the completion of their

transportation from Boston to Chicago by rail, when their weight is unknown and no particular barrels are capable of identification. We do not say that facts might not be put in evidence from which a jury could approximate to the true amount; but that is not such final disposition of the matter in controversy as that it might not become the subject or occasion of future litigation between the parties. No such facts were put in evidence, and the verdict in this case was against the law and unsupported by the evidence.

The judgment will therefore be reversed and the cause remanded.

*Judgment reversed.*