# THE VESSEL OWNERS' TOWING COMPANY

*v.*

# J. V. TAYLOR.

*Filed at Ottawa November 15, 1888.*

1. AGENCY—*captain of a vessel—power to represent owner on an arbitration.* While the captain of a vessel may be the special agent of the owner in all matters fully embraced in the scope of his appointment, and for all purposes connected with the ordinary employment of the vessel, still his position as captain does not, of itself, give him the right to act as attorney for the owner before arbitrators appointed to decide upon the question of damages resulting from a collision of his vessel with another.

2. ARBITRATION—*notice to the parties—by whom to be given.* The duty of giving notice to the parties of the time and place of hearing of matters submitted to arbitration, devolves upon the arbitrators. They have it in charge to see that sufficient notification is made to each party, and without such notice the award will be void, unless the intention of the parties is that the arbitrators shall proceed without their presence.

3. SAME—*hearing before all the arbitrators.* Each party to a proceeding to arbitrate is not only entitled to be present when the witnesses or arguments are heard, but each is entitled to have his case submitted

to all the arbitrators. So when any evidence is heard in the absence of one of the arbitrators without the assent of one of the parties, and an award is made against him, it will be invalid, and may be set aside at the instance of such party.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

This is a bill, filed in the Circuit Court of Cook County on January 28, 1885, by appellee against the appellant and one J. C. Dunbar, to set aside an award rendered under an agreement of submission theretofore entered into between the said complainant and the defendants, for the purpose of settling the liability for a collision, that had occurred on August 19, 1882, in Lake Michigan near the Chicago Crib, between the schooner "R. B. King," of which Dunbar was master, and the schooner "Floretta," which was owned by Taylor, the appellee, the "Floretta" being, at the time of the collision, in the tow of the tug, "Union," owned by the Vessel Owners' Towing Company, the appellant herein. The agreement for submission, dated August 24, 1882, was signed by J. L. Higgie, as president of the Towing Company, and by Taylor and Dunbar. The arbitrators named were Captains William Keith and William Carey, with power conferred on them to select a third party if they could not agree. They alone acted, no third person having been selected. The award, dated September 5, 1882, and signed by Keith and Carey, was as follows: "We, Wm. Keith and Wm. Carey, do herewith give you our decision in case of schooners "Floretta," "R. B. King" and "Tug Union." We hold schooner, "Floretta," responsible for her own damage through the action of Captain S. Murphy, her master, for giving four different orders and thus freeing "Tug Union" from all responsibility. We also hold schooner "R. B. King" responsible for her own damage for not keeping proper lookout."

Default was entered against Dunbar. The Towing Company filed a plea, setting up the agreement for submission and the

award and other facts, to which Taylor replied. By agreement the plea was treated as an answer to the bill. Upon the hearing, the Circuit judge dismissed the bill for want of equity, and, upon appeal to the Appellate Court, the latter court reversed the decree of the Circuit Court with directions to the trial court to enter a decree setting aside the award. From such judgment of the Appellate Court the appellant prosecutes its appeal to the Supreme Court.

Higgie, the president of the appellant company, was the main witness introduced by the defense to prove notice to Taylor of the arbitration. He testifies: "The arbitrators notified me on the 25th that they would meet in our office the next morning; I then notified J. V. Taylor that the arbitrators would meet next morning at 10 o'clock; I met him on the sidewalk and notified him; he was at our office very frequently; his office was just above ours;  *  *  *  the arbitrators met at our office; Captain Murphy came there with Mr. Taylor's men; I don't know how many he had; I don't know who notified him to come;  *  *  *  Taylor came to the office of the Co. the morning they met, just as they had gone into the room with the witnesses;  *  *  *  I told him "they had just gone in there with witnesses, I wish you would go in there and say what you have to say"  *  *  *;  he said, 'Capt. Murphy attends to my witnesses—I don't know anything about the case,' and he went out; I met him next on the sidewalk * * * I told him the arbitrators were busy down there and I wished he would go down there and talk to them, that I had so much business to attend to that I couldn't afford to fool away time; we were standing at the head of the stairs and I pointed down to my room; I think that it was the next day after the first session;  *  *  *  the next conversation I had with Mr. Taylor was in the Co.'s office; he wanted to know how the arbitration was getting along; I told him that Capt. Keith had gone to Milwaukee and I didn't know exactly when he would be back; after the evidence was all in I asked Murphy and Dunbar if

they had any more evidence; they said they had not; my witnesses were all in; I notified Taylor that the evidence was all in; I think it was the next morning in the office that I notified him; he said, if Capt. Murphy's evidence was in, that was all he had."

G. H. Jewell, who was Captain of the appellant's tug, "Union," when the collision occurred, testified for the defense, that, on the second day of the hearing, he was in the main office of the company and heard Higgie tell Taylor that the arbitrators were in session and to go in and see them, and Taylor said, "Capt. Murphy attends to my interest."

G. D. Kirkham, secretary of the appellant Co., testified for the defense that he heard Higgie tell Taylor, in the office of the Co., that the arbitrators were in session and to go to them for what information he wanted.

G. A. Cameron, book-keeper of appellant, testified for the defense, that, one day in the main office of the Co., he heard Higgie tell Taylor, in reply to an inquiry about the arbitration, that one of the arbitrators had gone to Milwaukee.

Complainant Taylor testified in chief as follows: "I never received any verbal or written notice to appear myself or bring my witnesses before William G. Keith and William Carey to arbitrate my rights in the collision between the 'Floretta,' the 'R. B. King' and the tug 'Union.' I did not know that any witnesses on part of my vessel had been examined until after I heard it was decided. I never produced any witnesses; I never knew there was one there until after it was over. No time or place was fixed upon for taking the testimony when the articles of arbitration were signed. I was never notified of any time or place for me to be present and present my testimony. I tried to find out, but I could not, and never did find out. I asked Mr. Higgie at one time, and he told me to find the arbitrators, and find out from them; and he told me, furthermore, that one of them had gone to Milwaukee, and he did not know when he would be back."

In rebuttal complainant testified as follows : "Captain Higgie did not notify me on the day before they commenced taking testimony that the arbitrators would commence their work the following day. I don't know what day they commenced. I don't remember saying to Captain Higgie that Mr. Murphy would tend to my business in regard to this suit. I don't believe I ever said so, because I never gave him any authority. I asked Captain Higgie several times about the arbitration—when I could come in with my witnesses. There was one time I remember asking when this arbitration was going to commence, and he says : 'They are down in there now taking testimony with the 'King's men—they wanted to get out.' I asked him where, and he says, 'down in my private office.' It was along in the afternoon, just as I was ready to go home, about four or five o'clock. Captain Higgie told me that I had better look up the arbitrators, and that brought up the question that Mr. Keith was away; and before I knew that he was back, I got notice that they had agreed on their verdict."

William Carey, one of the arbitrators, testified, on behalf of complainant, as follows : "I never asked Mr. Taylor to come before me when I was taking testimony. I never notified Mr. Taylor of any time being fixed, or about any witnesses, or anything else. His captain said he appeared in Mr. Taylor's interest, and I suppose he did. I never heard Mr. Taylor tell his captain to come before us, but I suppose, of course, he knew what his captain was doing. Mr. Taylor spoke to me some days before we took any testimony, in regard to that, on the sidewalk, and I took it for granted that he knew. I don't know why I never notified him. I supposed he knew. Mr. Taylor's captain, and Mr. Higgie and Mr. Dunbar, produced the witnesses. We merely examined them."

Messrs. Schuyler & Kremer, for the appellant:

Every reasonable intendment will be made in favor of an award, and the party seeking to impeach it assumes the bur-

den of proof to impeach it. Morse on Arbitration and Award, (1st ed.) 446; *Darst* v. *Collier,* 86 Ill. 100; *Tucker* v. *Page,* 69 id. 181; *Ballance* v. *Marshall,* 3 Scam. 453; *Sear* v. *Mosher,* 8 Bradw. 126.

While the law requires notice to the parties, of the hearing, the law does not require it to be given by the arbitrators when the submission is silent as to notice or the mode of notice. This question was not squarely raised in *Wood* v. *Helm,* 14 R. S. 328. See Morse on Arbitration and Awards, 118.

Notice to the captain of appellee's vessel, who appeared on the hearing for the appellee, is all the notice that was required. *Harding* v. *Wallace,* 8 B. Mon. 536; *Shockey's Adinr.* v. *Glasford,* 6 Dana, 9.

Appellee waived any personal notice to himself, and therefore is estopped to set up his own negligent acts, or those of his agent, as a reason to set aside the award. Cases last cited, and Morse on Arbitration and Award, 171.

Mr. WILLIAM H. CONDON, for the appellee:

The arbitrator should notify both parties of the time and place of hearing, otherwise the award will be set aside. *Ingraham* v. *Whitmore,* 75 Ill. 24; *Reeves* v. *Eldridge,* 20 id. 383; *Williams* v. *Schmitt,* 54 id. 205; *Curtis* v. *Sacramento,* 64 Cal. 102; Morse on Arbitration and Award, 117, 118.

The master of a vessel is not the general agent of his employer. *The Irma,* 6 Ben. Dist. C. R. 7; *Mitchelson* v. *Oliver,* E. & B. 419.

He can not vary or annul the owner's express agreement, (*Burgon* v. *Sharpe,* 2 Camp. 529,) nor can he bind the owner by the allowance of an invalid claim. (*Merrit* v. *Walsh,* 32 N. Y. 685.) He is only a special agent of the owner in all matters fully embraced in the scope of his appointment, and for all purposes connected with the ordinary employment of the vessel. See large number of authorites in notes 1, 2 and 3 to section 116 of Desty's Shipping and Admiralty.

It is a fatal objection to the award that a witness was examined before only one of the arbitrators, and in the absence of appellee and his captain. *Smith* v. *Smith*, 28 Ill. 56; Morse on Arbitration and Award, 117, 126.

Mr. JUSTICE MAGRUDER delivered the opinion of the Court:

The proof in this case shows, that the hearing before the arbitrators was had in the back room of the office of appellant, one of the interested parties. The award, afterwards rendered, relieved appellant of all responsibility for the collision between the vessels. The examination of witnesses appears to have been begun on August 26, 1882, and to have been conducted at different times during several days thereafter.

The bill alleges, as the main reason for setting aside the award, that the appellee, Taylor, was not notified of the hearing before the arbitrators, and did not appear before them, or authorize any one to appear for him.

It is established, beyond question, that neither of the two arbitrators, who made the award, gave the appellee any notice, either written or verbal, of the time when or place where they were to meet to hear evidence. It is also clearly proven, that the appellee himself did not appear in person at the hearing. Murphy, who was the captain of appellee's schooner at the time of the collision, was present on one or two occasions before the arbitrators and introduced some testimony. But appellee denies, that Murphy had any authority to represent him in the matter of presenting his claims at the arbitration. The captain of a vessel may be the special agent of the owner in all matters fully embraced in the scope of his appointment and for all purposes connected with the ordinary employment of the vessel, but his position as captain does not of itself give him the right to act as attorney for the owner before arbitrators appointed to decide upon the question of damages resulting from a collision.

Hence, the question is directly presented whether the parties to an agreement for submission are entitled to notice of the hearing from the arbitrators themselves.

In England, the practice has been for the party wishing to go on with the reference to. call upon the arbitrator, deliver to him the submission and request him to appoint a meeting; the arbitrator gives to the party so applying a written appointment, specifying the time and place for the parties and their witnesses to appear, a copy of which appointment the party so receiving it serves upon his opponent. "In the United States, the duty of giving notice of the time and place of hearing seems to belong to the arbitrators.   They have it in charge to see that sufficient notification is made to each party." (Morse on Arbitration and Award, pages 117 and 118 and cases there cited; Russell on Arb. (6th Ed.) page 176).   Unless it was the intention of the parties that the arbitration should proceed without their presence, "the arbitrators must give both parties notice of the time and place of meeting, and they have no authority to proceed *ex parte.*" (6 Wait's Actions and Defenses, 522)

In *Wood* v. *Helme*, 14 R. I. 325, where the submission was silent as to notice, the court said:   "Without question it was the duty of the arbitrators under the submission in this case to give due notice to the parties of the time and place for hearing the cause before proceeding therein."

In *Ingraham et al.* v. *Whitmore et al.* 75 Ill. 24, we said: "The doctrine is well established, that, where an arbitrator proceeds entirely *ex parte*, without giving the party against whom the award is made any notice of the proceeding under the submission, the award is void." ·

We are, therefore, of the opinion that it was the duty of the arbitrators in this case to see to it that all the parties to the submission had notice of the time and place of their meeting. They did not perform this duty.   They gave notice to Higgie, the president of the Towing Company, in whose favor the

17—126 ILL.

award was rendered. They gave no notice to appellee, the party against whom the award was made, nor did they require Higgie to give appellee such notice. They contented themselves with assuming that appellee knew of the hearing, because the man, who had been captain of his schooner, was present with certain testimony.

It is claimed, however, that it makes no difference whether notice is given by the arbitrators, or by one of the parties, or in some other way, if it be true that there was notice. It is said that "it is the fact of notice, which alone appears to be essential." (Morse on Arb. and Aw. 118.) Even if this be so, the proof is not clear that appellee had notice from any source. His own testimony is positive and emphatic not only that he was not notified, but that his inquiries failed to elicit any definite information as to the time and place of the meeting of the arbitrators. The testimony of appellant's president, who is interested in sustaining the award, has reference to casual remarks, made by him to appellee upon the street and upon the occasion of accidental visits by appellee to the main office of the Towing Company. Higgie does not claim that he gave any formal written notice to Taylor.

· Even if the presence before the arbitrators of Murphy, the captain of Taylor's schooner, could be regarded as the presence there of Taylor himself, it is not clear that Murphy represented Taylor at the taking of all the testimony. Carey, one of the arbitrators, says: "Mr. Murphy was present when *some* of the testimony was given by the Vessel Owners' Towing Company; I can't say how much; I don't know whether he knew when it was taken."

Again, while the hearing was in progress, Keith, one of the arbitrators, went to Milwaukee, and, during his absence from Chicago, one of the witnesses was examined by Carey, the other arbitrator. Higgie swears, that he asked appellee's permission to have the witness examined in Keith's absence, and that appellee consented to it. Appellee denies this in the following

words: "Captain Higgie never said anything to me that he wanted to take the testimony of a witness before Captain Carey while Captain Keith was away."

In *Wood* v. *Helme, supra*, it appeared that during the examination and hearing, one of the arbitrators absented himself, and it was held that such absence invalidated the award, on the ground that the arbitrators did not act together. Each party is not only entitled to be present when witnesses or arguments are heard, but each is entitled to have his case submitted to all the arbitrators. (Morse on Arb. and Aw. 151, 152, 117).

In *Smith* v. *Smith*, 28 Ill. 56, we said: "It is a rule that all the arbitrators must act and act together. They must each be present at every meeting, and the witnesses and the parties must be examined in the presence of them all."

For the reasons here stated, we think the Appellate Court was right in reversing the decree of the Circuit Court and directing that court to enter a decree setting aside the award.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.