## C. S. YOUNG

*v.*

## THE WELLS GLASS COMPANY.

*Opinion filed October 19, 1900—Rehearing denied December 6, 1900.*

EVIDENCE—*when architect's certificate of damages is not admissible—arbitration and award.* An architect's certificate of damages, based upon matters outside the contract and upon the *ex parte* statements of the owner without notice to the contractor, is void as an award of damage, and is not admissible in evidence in an action for the balance due under the contract.

*Young* v. *Wells Glass Co.* 87 Ill. App. 537, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

The appellee brought its suit in assumpsit in the superior court of Cook county against the appellant and others, as partners, under the firm name of C. S. Young & Co., to recover $3000 and interest thereon, claiming that amount as the balance due of the contract price for the manufacture of a miniature building in glass, and its erection in the Iowa State building at the World's Columbian Exposition, in 1893.

The allegations of the declaration and the evidence show that in December, 1892, C. S. Young & Co. and the Iowa Columbian Commission, a corporation of the State of Iowa, entered into a written contract, by which Young & Co. obtained an allotment of space twenty-three feet and eight inches by twenty feet in the Iowa State building at the exposition to erect a miniature building in glass, as nearly as possible a model of the Iowa State capitol building, for an exhibit of the grains and seeds of the State of Iowa. This glass model for such exhibit was to be constructed according to plans and specifications of M. E. Bell, architect, and under his direction,

and was to be completed in the space assigned by April 1, 1893. Young & Co. were to gather and exhibit the seeds, but the miniature building was to remain in the Iowa building during the exposition, and was to be the property of said commission and subject to its disposition and control. Young & Co. gave bond to the commission for the faithful performance of the contract on their part. Afterwards, on December 20, 1892, the Wells Glass Company, a corporation, and C. S. Young & Co., entered into a written contract, by which the glass company agreed to manufacture the glass building and to erect the same in said Iowa building according to the plans and specifications of M. E. Bell, architect, for the price of $4500,—$1500 of which was to be paid by the conveyance to appellee of ten lots,—and to complete the same by the first day of April, 1893, and that for each and every day after that date that the work should remain incomplete or in an unfinished condition, it, the glass company, would forfeit to Young & Co. $200, which, using the language of the contract, "shall be deducted from the contract price as liquidated damages and not as penalty, said damages to be determined, defined and settled by M. E. Bell, architect, whose decision shall be final and without recourse."

When the first day of April came the glass company had not erected the glass model in the Iowa State building, and could not then, and for a number of weeks thereafter could not, proceed to do so because the decorators and finishers had not completed their work on the State building, and kept and maintained their scaffolding in such a way as to obstruct the space where the miniature building was to be placed. On March 31,—the day before the model was to be completed and erected,—C. S. Young & Co. wrote the glass company that they expected it, the company, to comply with the contract and to finish the model by the first day of April, unless the company could make some arrangement with the Iowa commission

for an extension of time, as they, Young & Co., were un-der like contract with the commission, and would hold the glass company responsible for any damage caused by failure to fulfill the contract; and on April 3 C. S. Young wrote the glass company to get prices for which its pho-tographer would take photographs of the building, and to notify him when the building would be ready to photo-graph, and added: "I don't think you can figure on any longer time than the middle of April, though, of course, if you have made any arrangements with the Iowa com-mission you know how that is."

This building,—that is, the model in glass,—was erected and finished about June 3, 1893, and was accepted and approved by the architect. On June 7, at a meeting of the Iowa commission, that body adopted a resolution that C. S. Young & Co. be notified that the model erected by the glass company had been completed and was satis-factory to the commission, and on the next day a copy of the resolution was sent to them, C. S. Young & Co., by the secretary. On June 12 the architect notified the glass company that he had appeared before the Iowa commis-sion, and reported his acceptance of its work in erecting the model. Prior thereto the architect had issued two certificates, to the effect that the glass company was en-titled to certain payments on account of the work, but C. S. Young & Co. refused to pay anything, on the alleged ground that the model had not been completed within the time agreed upon and they had for that reason been deprived of the opportunity of photographing it, and had on that account lost the profits they would have realized on the sale of the photographs. They did, however, on June 29 convey the ten lots as they had agreed. After-ward they applied to the architect and obtained from him a statement in writing, certifying that he had esti-mated the actual losses sustained by C. S. Young & Co. on account of the non-fulfillment of the contract with the glass company at not less than $3500. This certificate

was offered in evidence by Young & Co. as a defense to appellee's suit, but was excluded from the jury by the court. No other evidence of any damages sustained by the defendant below was offered.

Counsel for appellee moved the court to instruct the jury to find a verdict for the plaintiff for $3000 and interest thereon, and counsel for the defendant asked the court to instruct the jury to find a verdict for the defendant. The court granted the motion of the plaintiff, and gave to the jury this instruction: "The jury are instructed to find for the plaintiff the sum of $3945," and the defendant excepted. Judgment was rendered on the verdict, and the defendant C. S. Young appealed to the Appellate Court. That court affirmed the judgment, and Young took his appeal to this court.

JAMES H. TELLER, for appellant.

HENRY W. WOLSELEY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Many imperfections in the record in this case have been pointed out, which, the appellee insists, should preclude appellant from having the benefit of the errors which he has assigned, but we prefer to rest our decision on the merits of the case as it was presented to and decided by the court below. The suit was to recover the balance of $3000 and interest claimed to be due on the contract. Appellant, or the firm of which he was a member, had, by the conveyance of the ten lots, paid $1500 of the contract price, thus leaving the balance of $3000 unpaid. The appellant, who was the only member of C. S. Young & Co. who appeared or was served, sought, by way of recoupment under the general issue, to defeat the recovery of the whole of this balance by proof that appellee failed to comply with its contract to complete the miniature building by the first of April, 1893, and

that C. S. Young & Co. had by such failure sustained damages in excess of such balance.

The first question necessary to consider arises on the exception of appellant to the ruling of the court in refusing to admit in evidence before the jury the certificate or written statement of the architect purporting to fix the amount of damages sustained by C. S. Young & Co. on account of appellee's failure to complete the model by April 1, 1893, at $3500. Appellant's contention was, and is, that the parties had by the contract made the architect the sole arbiter of those damages and his decision final and conclusive upon both parties, and that it was serious error to exclude from the jury the written conclusion and decision of the architect on that question. Conceding, as contended by appellant, that the amount of $200 per day to be forfeited to C. S. Young & Co. by appellee for each day's delay in completing the model after April 1, and to be deducted from the contract price, was to be considered as liquidated damages and not as penalty, the only question left for the architect to decide was the number of days' delay to be charged up to appellee. It appeared, however, from the evidence, that the architect had based his decision on the *ex parte* statements of appellant as to the profits which his firm would have realized from the sale of photographs if the model had been completed by the time specified in the contract. While the contract did provide that the damages should be "determined, defined and settled" by the architect, still, as the character, nature and amount of such damages had been liquidated by the parties themselves in the contract and fixed at so much per day, the architect's power to determine, define and settle the damages was confined to the question of the number of days for which appellee should be charged $200 per day. His own testimony shows that such was not the basis of his estimate. It appeared, also, that nearly two months prior to the making of this certificate he had accepted the model as

complete and satisfactory under the contract and had issued certificates that appellee was entitled to receive $2000, and stating the balance as $1000 and ten lots, which constituted the whole of the contract price, and had made no deduction whatever for damages, as provided by the contract, and that he afterward made his estimate of damages without the knowledge of or any notice whatever to appellee. The architect was not authorized by the contract, or otherwise, to make his decision as to damages to be allowed to C. S. Young & Co. on *ex parte* statements of Young and without notice to appellee, and the court properly held his certificate of damages void and not admissible in evidence. In *Ingraham* v. *Whitmore*, 75 Ill. 24, this court said (p. 31): "The doctrine is well established that where an arbitrator proceeds entirely *ex parte*, without giving the party against whom the award is made any notice of the proceeding under the submission, the award is void, and it is not necessary to show corruption on the part of the arbitrator." See, also, *Vessel Owners' Towing Co.* v. *Taylor*, 126 Ill. 250; 2 Am. & Eng. Ency. of Law, (2d ed.) 650.

It is to be observed that the architect's decision was not arrived at from the contract and matters within his own knowledge, but in part, at least, outside of the contract and from statements of one, only, of the parties. If it were held that his decision amounted only to a determination of the number of days' delay for which appellee should pay the stipulated damages of $200 for each day, still, appellee had the right to have considered the letters which it had received from appellant and his firm, and upon which it had the right to rely, referring appellee to the Iowa commission for authority to extend the time for the completion of the model. These letters tended to prove that such delays and extensions as were satisfactory to the commission would be satisfactory to Young & Co., as Young & Co. were under contract with the commission to have the model finished and in place

on the same date,—that is, on April 1. It would seem that the architect did not know of these letters, or else he ignored them. Appellee was entitled to the benefit of them. Besides, the evidence tended strongly to prove that the delay was caused by the commission itself in keeping the space allotted for the erection of the model obstructed by its own workmen.

We have not thought it necessary to consider whether or not C. S. Young & Co. in obtaining, and the architect in making and issuing, this certificate in the manner in which it was obtained and issued, exercised good faith, for that was a question for the jury, and does not, perhaps, arise here, where the court instructed the jury to find for the plaintiff. But the other questions are referred to as showing the importance of notice to appellee before the damages were fixed by the architect. There was no error in refusing to admit in evidence this void certificate of damages.

The next question is, did the court err in instructing the jury to find for the plaintiff the unpaid balance of the contract price? As the evidence then stood, the jury would not have been justified in finding that there was any delay of appellee in completing its work, except such as was satisfactory to or caused or authorized by the commission, to whom it had been referred by Young & Co. as having power to extend the time. The jury were, under the evidence then before them, bound to find for the plaintiff the amount due under the contract, as there was no evidence upon which to allow any damages to the defendant. Any other verdict would necessarily have been set aside. Indeed, no error was assigned in the Appellate Court, nor has been in this court, that the amount of the verdict was excessive.

The judgment of the Appellate Court affirming the judgment below is affirmed.    *Judgment affirmed.*