Hennepin Public Water District, Plaintiff-Appellant, *v.* Petersen Construction Company *et al.*, Defendants-Appellees—Continental Casualty Company, Third Party Plaintiff-Appellee, *v* Petersen Construction Company *et al.*, Third Party Defendants-Appellants.

(No. 70-33;

Third District—May 26, 1971.

*Rehearing denied June 23, 1971.*

ALLOY, P. J., dissenting.

Walter D. Boyle, of Hennepin, for appellant.

Goldsmith, Dyer, Thelin & Schiller, of Aurora, and Herbolsheimer & Lannon, of LaSalle, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Plaintiff-Appellant, Hennepin Public Water District, (referred to as Hennepin) commenced this action in the Circuit Court of Putnam County seeking to recover liquidated damages from Defendant-Appellee, Petersen Construction Company (referred to as Petersen) and Defendant-Appellee, Continental Casualty Company (referred to as Continental). The action was based on a bid bond executed by Petersen as principal and Continental as surety in favor of Hennepin as security for Petersen's bids on certain construction projects. Continental filed a third party action against Petersen seeking indemnity pursuant to an agreement between them with respect to any damages Continental might sustain as a result of the principal action. The issues were tried before a jury

and on the principal action resulted in a finding in favor of both defendants and against Hennepin upon which judgment was entered and post trial motions denied. Hennepin has appealed from this judgment. The jury did not return any verdicts regarding the third party action but pursuant to Continental's post trial motion the trial court entered judgment against Petersen which the court found to be due under the terms of the indemnity agreement for attorneys' fees and other expenses for Continental's defense of the action. Petersen has filed a cross appeal from this action of the trial court.

In 1966, Hennepin proposed to construct two substantial improvements to its facilities. The first project was a sewerage treatment plant and the second included well equipment and an administration building. To provide the technical and engineering assistance necessary for these projects Hennepin employed Consoer, Townsend and Associates, Engineers of Chicago. The firm did all the preliminary engineering work customarily incident to such construction projects and the results of its labors was a volume of documents which are referred to as the contract documents. The contract documents are divided into three major parts. These are the Proposal Section, the Agreement Section and the Contract Specifications. The proposal section consists of a notice to bidders or invitation to bid, a brief description of the work, special and general instructions to bidders, and finally proposal forms which were used by the Contractor to state its bid or the prices for which it would enter into each of the contracts. When the Contractor made its bid it returned the contract documents to the plaintiff with its bids set forth in the said forms therefore in the proposal section. The agreement section consists of special and general conditions of contract, and forms of the exact agreements for the construction of the facilities which the Contractor was to enter into if an award were made to it. These forms lacked only the dollar figures of the actual agreements. All sections of the contract documents were bound together and the forms of the agreements included so that when a bidder signed the proposal section it was aware of the exact agreements which it would be required to execute if its bid were accepted. The contract specifications consist merely of the technical specifications of the work and are of no particular relevance in this case. Although contained in the same volume the two projects were described separately and it was specified that the two projects were independent and the volume of documents included separate documents relating to each project.

During 1966, and prior thereto, Petersen had been engaged in several construction projects under the authority of Consoer, Townsend & Associates. In June of 1966, Petersen acquired the plans etc., completed the

proposal or bid forms and submitted its bids to Hennepin on July 28, 1966, the last day that bids could be submitted.

If the bidder was the successful bidder the proposal provided that he would both execute the agreements contained in the contract documents and provide a performance bond. For failure to execute the agreements and provide the performance bond within 10 days after the award of the contract, the bidder agreed to pay as liquidated damages an amount equal to 5% (five per cent) of the bid price. To assure payment of the liquidated damages the bidder was required to provide security cash, etc. or as in this case a commercial surety bond referred to as a bid bond executed by Petersen as principal and Continental as surety in favor of Hennepin.

The bids were opened on July 28, 1966, (the same date that Petersen's bid and bond were submitted) at which time it was ascertained that Petersen was the apparent low bidder on each project, the bid for project one being $383,000 and project two $108,000. Petersen did not thereafter enter into the construction agreement for the two projects with Hennepin and did not furnish a performance bond. As a result of such failure Hennepin instituted this action against Petersen and Continental on the bid bond.

Appellant Hennepin has made several assignments of error particularly relating to the sufficiency in law and fact of Petersen's affirmative defenses. The only issue which we believe it necessary to discuss in this opinion because we believe it dispositive of the propriety of the judgment, is Petersen's defense that its performance was excused because of Hennepin's prior non-performance of an essential provision of the contract.

This is an action for breach of contract and we are unable to understand Petersen's suggestion that it is not. The transaction does involve multiple stages and mutually interdependent conditions. Be that as it may the dispute arises from the conditions of offer and acceptance.

There are several provisions of the bid proposals and proposed contract which are pertinent and applicable to the undisputed facts regarding the conduct of the parties. The proposal section included the following provision, "Financing Improvements—The Owner proposes to complete financing arrangements for this improvement within a period of sixty (60) days after construction bids are received. The bid securities of all bidders, except the security submitted with the lowest acceptable bid, will be returned within a fifteen (15) day period following the time of receipt of the bids. The bid security accompanying the lowest acceptable Proposal will be returned on request after the Owner has made a conditional award to the successful bidder if a satisfactory Performance Bond has been delivered to the Owner. The conditional award

will not be in effect until the Owner has been successful in raising the required funds for payment of construction. Provided it proves impossible to raise the required funds, the conditional award will be canceled by the Owner and the Owner shall not then be liable for any payments whatsoever to the Contractor. Extension of time beyond the sixty (60) day period of the conditional award may be made only by mutual agreement between the Owner, the Contractor and the Contractor's Surety" and "Construction Funds—The Hennepin Public Water District proposes to complete the sale of water and sewer revenue bonds to finance this project within a period of sixty (60) days after construction bids are received. Provided it proves impossible to raise the required funds to finance this project, the conditional award will be cancelled by the Hennepin Public Water District and the District shall not then be liable for any payments whatsoever to the Contractor. Extension of time beyond the 60 day period of the conditional award may be made only by mutual agreement between the Owner, the Contractor and the Contractor's Surety."

Another provision of the proposal section provided that the contractor (bidder) agreed to execute the agreement forms and provide a performance bond within 10 days after the contract was awarded to it. It is the failure of Petersen to comply with this provision (also the condition in the commercial surety bond) which is the basis of this action.

It is undisputed that Hennepin did not tender or deliver the agreement forms to Peterson for execution until October 3, 1966, some 67 days after July 28, 1966, the date upon which all bids were required to have been filed and the date the bids were opened. It is also undisputed that Petersen was notified of the tentative award on Project I, September 7, 1966 and on Project 2 on September 26, 1966. Also on September 26, 1966, (the 60th day after bids were opened) Hennepin completed the sale of its bonds necessary to finance these projects. During September, 1966, Petersen made numerous inquiries of Consoer & Townsend concerning submission of the agreements to it but was informed that they were not ready.

Hennepin concedes that at least with respect to the first project its tender and submission of the agreement documents on October 3, 1966, was contrary to the provisions of the contract. The nature of the concession demonstrates a basic weakness in Hennepin's position. It is Hennepin's theory that it was only required to submit the agreement documents within 10 days from the award of the projects and its failure to do so was immaterial, insignificant and of no legal consequences as a matter of law.

The only provision of the contract claimed by Hennepin to support

its theory of the duty to submit agreement forms is that provision requiring Petersen to execute the agreements within 10 days of the award. Such a construction is we believe untenable and meaningless as a basis for predicating or requiring conduct by the successful bidder i.e. execution of the agreement forms. The execution of the agreement forms within 10 days of the award is an obligation of the bidder. Such obligation is meaningless and makes no sense unless that which the bidder is obligated to do within the limited period is available for him to do at the outset of the period. If the bidder be required to execute agreement forms within 10 days from the award it must be that the submission of such agreement forms is the essential part of the awarding of the contracts. Until the agreement forms are submitted for execution there is either no award or the award is not completed and performance can not be expected or required.

As heretofore noted a provision of the proposal section provided that Hennepin's right to terminate a conditional award could be exercised only within the 60 day period from date bids were received, the period not being extendable without consent of the parties. This section contemplates that the award which we believe includes the submission of contract forms, will and must have occurred prior to the expiration of the 60 day period otherwise no effect is given either to the language of the provisions or to the restriction against extension without consent.

Since the agreement forms were not tendered until after the expiration of the 60 day period it is our conclusion that within the meaning of the contract provisions the contracts were not awarded until that date and at that time the bidder was under no obligation to execute such agreement.

Not only do we deem Henepin's conduct contrary to an express provision of the obligation upon which this suit is based, but we also believe that the delay had substantial consequences adversely affecting the successful performance by Petersen. At the October 3 meeting Petersen requested either that the $500 per day penalty for late performance be eliminated or that the amount of the contract be increased to enable additional men to be employed. Both requests were refused by Hennepin.

However in its brief Hennepin now argues that on the authority of *Young v. Wells Glass Company,* 187 Ill. 626, any delays occasioned by its own conduct would excuse performance by the date specified and relieve against the penalty. Not only does such argument concede the significance of the delay but it also overlooks or ignores the fact that Hennepin on October 3, 1966, was unwilling to concede that its conduct had caused any delay. If Petersen had proceeded with full knowledge of Hennepin's

position undoubtedly it could be claimed that prior delay had been waived. At best there loomed the spectre of controversy and possible litigation on account of non-performance within the limited period.

Accordingly it is our conclusion that Petersen's failure to perform according to the conditions of its bid was justified by the prior non-performance of Hennepin. Consequently the judgment against Hennepin on the bid bond was proper.

This brings us to the cross appeal of Petersen against Continental in which Petersen urges that the judgment for attorney's fees and expenses of defending the suit by Continental was erroneous. In this respect it does not appear that Petersen is arguing that the expenses are unreasonable in amount but rather it argues that its liability therefore was not properly determined by the trial court as a matter of law.

Continental's third party complaint sought indemnity under the general indemnification agreement entered into between Continental and Petersen at the outset of its relationship. Petersen in response thereto contended that Continental was estopped from asserting such a claim because the resulting damages if any, resulted from Continental's own misconduct.

As its defense to Hennepin's action Petersen argues that its failure to execute the agreement forms was due to Hennepin's prior misconduct. As a defense to Continental's third party action Petersen argued that its predicament was the result of Continental's refusal to execute and deliver a performance bond which Petersen was also required to provide. Petersen was in the unenviable position of urging mutually exclusive defenses depending upon which party was attacking.

As we have heretofore held in this opinion that Petersen's affirmative defense established its non-liability to Hennepin, it follows that whether Continental would or would not issue its performance bond was immaterial. The parties have devoted significant portions of their brief to debating whether the equitable defense of estoppal if urged in an action at law is properly submitted to and resolved with binding force by a jury. We need not decide this issue because in our opinion the threshold question is whether there is any issue of fact requiring resolution by the trier of fact. We hold that there is no such issue of fact and that the judgment against Hennepin on the principal action conclusively establishes the absence of any consequences related to Continental's actions. If Petersen was not liable for breach of contract it can hardly be said that Continental's action caused a breach of contract.

Finally in our opinion we believe that the indemnification agreement was broad enough to include the costs and expenses of defending any

action brought against Continental as surety on any bond executed in behalf of Petersen.

Finding no error in the judgments of the Circuit Court of Putnam County the judgments of said Court are affirmed.

Judgments affirmed.

SCOTT, J., concurs.

Mr. PRESIDING JUSTICE ALLOY dissenting:

I cannot agree with the conclusion in the majority opinion denying the recovery of liquidated damages against Petersen and Continental on the bid bond executed in favor of Hennepin Public Water District on the construction project referred to in the majority opinion. It is clear from the record that as late as October 3, 1966, Petersen was still willing to enter into the contract and to attempt performance. The record indicates that it was Continental's final refusal to issue the performance bond which put Petersen in a position where Petersen abandoned the project and declined to enter into the contract with the Hennepin Water District. I do not believe that the record sustains the conclusion in the majority opinion that Petersen's failure to perform according to the conditions of its bid bond was justified by the prior "nonperformance" of Hennepin. Also, Petersen would not have been subjected to penalties for late completion if such delay resulted from the delay by the water district. It would, therefore, follow, also, that the court was in error in concluding that the indemnification agreement executed by Petersen authorized the entry of judgment as against Petersen in the amounts which the court found to be due under the terms of the indemnity agreement. The record indicates that the only reason the contractor did not proceed in October 1966 was that Continental finally refused to issue a performance bond. I believe that the evidence supports the complaint of Hennepin and that the judgments of the Circuit Court of Putnam County should have been reversed.