*A. G. Deavitt*, for the appellant.

---

## McCullough *v.* McCullough.

Where part of an award relates to matters not within the terms of the submission, the whole award will be void unless that part can be distinguished from the residue.

Where an award thus embraces matters not authorized by the submission, the whole award will be void, unless it can be shown that such unauthorized part was so disconnected from the residue as to have no influence upon the consideration thereof.

Where a party undertakes, in his pleadings, to show that part of an award was unauthorized by the submission, and to maintain the residue, to entitle him to succeed, he must prove, 1. That the part which he seeks to have rejected relates to matters not submitted to the arbitrators; 2. That the residue is so distinct and complete in itself as to constitute a valid award after its rejection; and 3. That it had no influence upon the consideration of the residue.

Where two of the arbitrators in such case, are called and examined as witnesses touching the matters submitted to them, and their testimony is conflicting, a writing signed by them, and containing that part of the award sought to be rejected, after it has been submitted to them, is competent evidence, to be considered by the jury in determining the relative weight that ought to be given to the testimony of such witnesses.

APPEAL from the *Vigo* Circuit Court.

HANNA, J.— *Otis McCullough* sued *James McCullough* in an action of debt, under the old form of practice, on an award, &c. The declaration contains five counts.

The first, is upon a bond in the sum of 2,000 dollars for the performance of an award.

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

The second, is on an award.

The third, is for money had and received.

The fourth and fifth, are substantially the same as the second.

The award declared on is as follows:

"Whereas, *Otis* and *James McCullough* have, by their respective bonds, dated *March* 3, 1843, mutually submitted certain matters of difference between them, in the conditions of said bonds specified, to the award of *Benjamin Whitcomb, Otis M. Conkey*, and *William B. Warren;* and whereas, the said arbitrators have taken upon themselves the burden of the reference, and having heard and considered the proofs, &c., do make and publish this award, to-wit: We do award, first, that *James McCullough* is indebted to *Otis McCullough* in the sum of 1,196 dollars, as a just amount between the parties. Given under our hands and seals this 6th of *March*, 1843.

"*B. Whitcomb*,          [seal.]

"*William B. Warren*, [seal.]

"*Otis M. Conkey*,      [seal.]"

The defendant craved and obtained oyer of the award, and pleaded twenty-one pleas.

The instrument set out on oyer is precisely in the language above copied, with the following after the signature of the arbitrators, to-wit:

"We, the arbitrators, decide that should there ever be collected out of the hands of *Lindley* and *Williams*, on the transactions of a mistake, as contended for, that the same shall belong to *James McCullough;* and further, that the *S. B. Mullen* balance shall also be his, and 10 per cent. shall be calculated on all matters of difference of offset between the parties, from due up to this time, *March* 6, 1843.

"*William Warren*,

"*Otis M. Conkey*,

"*B. Whitcomb*."

The case turned upon the pleadings on the award.

The points included in the defenses set up were, so far as we need notice them—

1. No award.

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

2. That the latter branch of the instrument, set out on oyer, but not declared on, is a part of the award, and avoids the whole of it, because it is thereby rendered uncertain, and not final between the parties.

3. The arbitrators failed and refused to act upon all the claims of defendant, &c.

4. Set-off.

Among the various issues formed upon the pleas, it is only necessary for us to notice one, as upon that the case turns, in our opinion.

To the plea that all the instrument, set out on oyer, formed and constituted the award, &c., the plaintiff replied, admitting that, true it was, the award was made as set forth in that plea; but that the submission, in pursuance of which said award was made, is as follows: "The said *James McCullough* and *Otis McCullough* have this day agreed to submit to the award and umpirage of *Benjamin R. Whitcomb, Otis M. Conkey*, and *William B. Warren*, on the matters of difference between the said *Otis* and *James*, herein stated and referred to, to-wit, their adventure in the purchase and sales of pork, commencing in *December*, 1838, and all matters growing out of and connected with said adventure, as well as their respective private accounts between each other from that time to this date, which matters of difference they, the said arbitrators, or a majority thereof, shall decide thereon, and make their award thereon in writing." And the plaintiff avers that the following portion of the award pleaded, to-wit, "and that 10 per cent. shall be calculated on all matters of difference of offset between the parties from due up to this time, was not made of and concerning the matters submitted to their award, but was of matters not embraced, &c., and was not intended to, and does not affect, the award, &c.

The defendant took issue upon this replication.

There was a jury trial; verdict and judgment, over a motion for a new trial, for plaintiff for 1,806 dollars.

The evidence is in the record.

Two thousand dollars is the amount demanded in the

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

commencement of the declaration; in the conclusion, the damages are laid at 1,000 dollars. It is insisted that the plaintiff could not recover in damages at all, and that the verdict is, therefore, defective, because the plaintiff was not entitled to more than claimed in the conclusion of his declaration. The record shows that, as to the pleadings, the case was fully and fairly before the jury on its merits, and that it would be a bar to another suit for the same cause of action. By § 85, R. S. 1843, p. 639, which was in force in 1851, when the cause was tried, the verdict and judgment was, as to that supposed defect, sufficient, whatever may have been the law upon that point previous to the enactment of that statute.

It is argued that the award is neither certain nor final, and therefore a nullity, because of the latter branch of the instrument set out on oyer, pleaded as the award, and admitted by the replication to have been made as such.

Now, it is true that an award must be certain, and this certainty must appear on its face. It must also be final as to all the matters submitted. And where a part of it relates to matters not submitted, the whole of it is void, unless the unauthorized part is distinguishable from the residue, and unless it appears that the consideration of the unauthorized part was so disconnected from the residue as to have no influence upon it. *Gibbs* v. *Berry*, 13 Ired. 388.—*Boynton* v. *Fry*, 33 Maine R. 216.—2 Phil. Ev. (10th ed.), p. 404, and authorities there cited.

It will be presumed that arbitrators have acted within the scope of their authority, unless the contrary appears. *Solomons* v. *M'Kinstry*, 13 Johns. 27.—*Waite* v. *Barry*, 12 Wend. 377. And as the parties were bound to bring before the arbitrators all matters in dispute which, by the agreement of submission, were to be passed upon by them, it will be presumed that they were before them, and passed upon. *Stipp* v. *Washington Hall Company*, 5 Blackf. 473.

A question is raised, and argued with much ability and ingenuity on each side, as to the ruling of the Court upon the admissibility of evidence.

It will be recollected that the paper produced on oyer,

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

although in two parts, or rather signed twice, was pleaded by the defendant, and set up as altogether forming the award. This was admitted in the next pleading of the plaintiff, to have been made as the award of the arbitrators; but it is then averred that a part of the instrument thus shown on oyer and pleaded, was of matters outside of those submitted to arbitration, but did not affect that part of the award which was of matters within the submission. Upon that replication, an issue of fact was formed. By tendering this issue, it devolved upon the plaintiff, before he could maintain his award, to establish three propositions, if the issue thus tendered was material; first, that the part of the award pointed out, was of matters not submitted to the arbitrators; and second, that such part could be so distinguished as to leave the other part, upon which the plaintiff relied, standing, after that should be rejected; and third, that the consideration of that portion of the award, thus to be rejected, had no influence on the valid part, because of the want of connection therewith. Watson on Arb. and Awards, 117, 118.—*Martin* v. *Hitchcock*, 12 Wend. 156.

We are of opinion that the issue was material; in other words, that, if it is true that the portion of the award pointed out, was of matters submitted, then it renders the whole award so uncertain—gave it such a want of finality —that it was not conclusive. but wholly inoperative.

The next question is, by what evidence was that issue to be determined?

Let us examine the award as shown by the pleadings to have been made. First, is awarded to the plaintiff a sum certain; second, to the defendant certain unsettled claims, or whatever might arise and be due to the firm therefrom; and third, that "10 per cent. shall be calculated on all matters of difference of offset between the parties from due up to this time." Now, most assuredly, there is such an entire absence of certainty in this latter clause, as at once vitiates the whole award, looking alone to the record then made. There is no amount stated upon which the 10 per cent. is to be cast, nor any date from which the

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

calculation is to be made; nor is there the least indication of what that portion of the award was intended to apply to, other than that it was "difference of offset between the parties." This the law itself would have made as clear, for the presumption would be that it was of matters submitted. *Parsons* v. *Aldrich*, 6 N. H. R. 265.

The next question that arises, is upon the ruling of the Court in excluding certain matters offered in evidence by the defendant. Conceding, for the sake of the argument, that the inquiry, whether the clause in the award was of matters submitted to the arbitrators, was a question for the jury, as the inferior Court held by submitting that question to a jury, then, we are led to an examination of the testimony given, and that offered and rejected upon that issue.

The plaintiff proved, upon this point, by one of the arbitrators, that the 10 per cent. clause did not relate to matters submitted; that it had reference to matters of account between the parties prior to *December*, 1838; that an item of account of 234 dollars, 84 cents, was withdrawn from said arbitrators, to rebut, as stated by the parties, matters of account that existed prior to *December*, 1838; that witness signed three papers on the day of making the award; that the third was signed by one other of the arbitrators and the witness, about an hour after the award was signed, and was so drawn up and signed because counsel for defendant objected to the uncertainty of the language in relation to said 10 per cent., and was for the purpose of explaining the matters mentioned in the second part of the award; that the reason the second part of the award was made was, because the parties stated that there were accounts between them prior to *December*, 1838, and that as *Otis* had been allowed 10 per cent. on the matters awarded on; in making it up against *James*, they made this memorandum to show that 10 per cent. ought to be allowed *James* on any matters of offset he might have.

The defendant proved by another of the arbitrators, that a certain order drawn by the plaintiff on the defendant for 234 dollars, 84 cents, and dated *January* 1, 1840, was paid

by defendant at its date; that the order was before them, and he had no knowledge of its being withdrawn; that the 10 per cent. in the second part of the award, related to this order and other items of account which the defendant had against the plaintiff, which were submitted to the arbitrators, and upon which they made no award; that the paper shown to the witness, called the third paper, was signed by witness and the other arbitrator who had testified, about an hour after the award was made, more fully to explain matters stated in the award; that after refreshing his recollection by looking at the said paper, he could say that said item of 234 dollars, 84 cents was left out and not acted upon by said arbitrators.

The paper referred to by each of the arbitrators in his evidence, was offered in evidence by the defendant, the signatures thereto being admitted by the plaintiff.

On objection by plaintiff, the paper was excluded, it is as follows: "We, the arbitrators, decide that should there ever be anything collected from *Lindley* and *Williams* in the transaction with them, on the ground of a mistake, as contended for by *James McCullough*, that the same shall belong to *James McCullough*; and further, that the ballance due from *S. B. Mullin* shall also be his, and also that 10 per cent. shall be allowed him on the amount of 234 dollars, 84 cents, from the first day of *January*, 1840, and which amount is to apply as a payment or set-off against the amount this day awarded in favor of *Otis* against *James McCullough*, *March* 6, 1843.        *W. B. Warren*,
                                "*O. M. Conkey*."

Ought the paper to have been admitted in evidence?

It is proper here to state, that the arbitrator who was introduced as a witness by the plaintiff, was recalled, and stated that a memorandum at the bottom of the second part of the award was written by him, as follows: "One of the matters thrown out in the above, was a private order of 234 dollars, 84 cents, and——" which words are erased by running a pen over them—but that witness could nevertheless still read them; and that he believed "the

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

words erased stated the facts as he understood them at the time."

The award, memorandum, &c., were made *March* 6, 1843. The trial was in *September*, 1851.

It is now objected that the writing alluded to by the witnesses as the "third paper," ought not to have been admitted, because it was a mere nullity, binding nobody, and because it was not placed in the hands of both the persons who signed it, and their attention particularly called to it whilst they were testifying; nor did they deny its execution, or its correctness. The argument in support of this position is, that the most it could have been received for would have been to contradict a witness in his evidence, by showing, by this paper, that he had, at another time and place made a different statement, and, therefore, his attention should specially have been called to the contents of the paper; and because it contains a mere void decision, and no fact at all.

Upon an analogous question, it is laid down in 1 Greenl. Ev., § 463, that "The contents of every written paper, according to the ordinary and well established rules of evidence, are to be proved by the paper itself, and by that alone, if it is in existence. But it is not required that the whole paper should be shown to the witness. Two or three lines only of it may be shown to a witness, &c. * * * * If he admits the letter to be his writing, he cannot be asked whether statements, such as the counsel may suggest, are contained in it, but the whole letter itself must be read." This authority is based upon the leading case upon that point. *The Queen's Case*, 2 Brod. and Bing. 286, where see responses of judges of *England* upon interrogatories put by the House of Lords. It is further stated that "According to the ordinary rule of proceeding in such cases, the letter is to be read as the evidence of the cross-examining counsel, in his turn, when he shall have opened his case." *Ibid.*

From this, we are led to believe that the principal reason for placing the writing in the hands and subjecting it to the examination of the witness, is to ascertain whether

he executed it, and give him an opportunity to note its contents, that he may be the better prepared, when called upon, to offer explanations of discrepancies, if any exist, between its contents and his evidence.

In the case at bar, the witness, in whose hands it does not directly appear that whilst he was testifying, the writing was placed, had, before the paper was offered in evidence, entered into an explanation of the reason why, and the purpose for which, the paper was written and signed, as well as the circumstances under which it was done. We think it sufficiently appears he was apprised of its contents. There was no necessity for calling his attention to it, to prove his signature thereto. That was admitted by the parties.

In *Crowley* v. *Page*, 7 Carr. and Payne, 789, 32 E. C. L. 738, the suit was for a failure to deliver hay according to a contract. Defense, offer to deliver of the quality required. *Beard*, a witness, was called, who stated that the hay which was offered was not of good quality, &c. On being shown a paper, on cross-examination, he said, "I signed this paper."

In the argument, *Talfourd*, sergeant, for defendant, was proceeding to read the paper, when objection was made because "*Beard* did not deny it." Parke, B., "If the witness has said at another time that the hay was good, you may give evidence that he said so; and, if it was by writing, you may read the document. *Beard* said, when the paper was shown to him, that the signature was his. That entitles the other side to read it. If it contradicts his evidence, he may be called back to explain it."

In *Leavey* v. *Dearbourn*, 19 N. Hamp. 357, it is said that "The memorandum made at the time of the transaction, for the purpose of stating it truly and circumstantially, becomes evidence, it having been first shown, by other proper proof, that it was so made."

In *Haven* v. *Wendell*, 11 *id.* 120, a witness had, after a conversation with one of the defendants, made a memorandum in writing thereof, and gave it to the plaintiff. The fact that he held a conversation, and that he made the writ-

May Term,
1859.

McCul-
lough
v.
McCul-
lough.

ing, he recollected, but not the particulars of such conversation. Upon being shown a paper, he recognized it as the memorandum he had made, and stated that if he had been called on soon afterwards, he would, he had no doubt, have testified to the statement of facts it contained. The paper was read. It was held that "It is not disputed that the witness might have been admitted to testify to these facts as existing in his recollection. If the paper be authentic, his record of the fact, made at the time when he was much less liable to mistake, is much better than his recollection of the facts so long afterwards."

We are of opinion that, under the circumstances of this case, the ruling of the Court, in excluding the evidence offered, was erroneous. It tended directly to elucidate the doubt which was cast around the question whether the "10 per cent. clause" had reference to matters submitted. If it was not evidence of the substantive facts stated in it, which we need not decide, it was clearly such as might be considered by the jury, in determining the relative value of the testimony, and the weight that ought to be given to each witness who had testified upon the point, upon which they had made a statement, whilst the facts from which they had written that statement, were yet fresh in their memory. It is not to be disguised that the evidence of the two arbitrators, whose testimony is above referred to, was contradictory in several essential particulars. One testified that the clause of the award under consideration, was of matters not submitted—the other, that it was. One that the item of 234 dollars, 84 cents, was on an account—the other, that it was on an order. One that the item was withdrawn—the other, that it was not, nor was it acted upon by the arbitrators. These contradictions, to say the least of them, show that either there was a misunderstanding of the facts, as they existed at the time of the transaction, or else that the memory of one was more to be relied on than that of the other. They had both, at the time, signed this statement in regard to the very point upon which there was, near nine years afterwards, such a

variance in their recollections. The jury should have heard it.

*Per Curiam.*—The judgment is reversed with costs. Cause remanded, &c.

DAVISON, J, dissents.

*A. Kinney, S. B. Gookins, J. P. Usher,* and *D. W. Voorhees,* for the appellant.

*D. M'Donald, C. W. Barbour,* and *A. G. Porter,* for the appellee.