# Edward Taylor, Appellee, v. Scott, Foresman & Company, Appellant.

## Gen. No. 17,124.

1. EQUITY—*where contract which is not mutual is basis for an accounting.* A contract whereby defendants agree to pay plaintiff a royalty for the publication of his book, though lacking mutuality sufficient to support an action to compel defendants to publish and market the books, may be the basis of an action for an accounting and recovery of royalties on books actually published.

2. STATUTES OF FRAUDS—*contracts not to be performed within a year.* A contract, to be invalid as not to be performed within one year, must affirmatively so appear by its terms.

3. STATUTE OF FRAUDS—*when contract is to be performed.* In determining whether a contract is to be performed within a year, facts or circumstances not gathered from a reasonable interpretation of the express terms of the contract cannot be considered.

4. STATUTE OF FRAUDS—*intention of parties as to time of performance.* The intention or expectation of the parties, or the probabilities as to time of performance, cannot be considered in determining whether a contract is within the statute of frauds.

5. STATUTE OF FRAUDS—*where contract is not to be performed within a year.* Where defendant agrees orally to pay plaintiff a certain royalty on his book and promises to make semi-annual reports on the first day of January and the first day of July, and settlements on the first day of May and the first day of November of "each and every year," the contract is void under the statute of frauds.

6. STATUTE OF FRAUDS—*what writing sufficient.* Any writing signed by the party to be·charged, definitely stating the terms of a contract, or from which those terms can be fairly inferred, is sufficient to take the contract out of the operation of the statute.

7. STATUTE OF FRAUDS—*when letters will not take contract out of the statute.* Letters between the parties to a contract, which merely reiterate the claims of the respective parties concerning the terms, to which the other does not assent, are not sufficient to take the contract out of the operation of the statute.

8. STATUTE OF FRAUDS—*where contract is partly parol and partly written.* Where a contract is partly in writing and partly in parol, it will be treated as parol in determining whether it is within the statute of frauds.

9. ARBITRATION AND AWARD—*when award is void.* Where an award of arbitrators does not follow the contract of submission, it is void.

10. ARBITRATION AND AWARD—*when award does not follow submission.* Where a board of arbitrators in determining the royalty to be paid on a book limit the award to books sold in Kansas when the submission was not so limited, and in another finding where the submission is to determine the royalty on books exchanged in Kansas do not limit the award to Kansas, the findings do not follow the submission and are not binding.

11. LIMITATIONS—*on written contracts.* The Five-Year Statute of Limitations has no application to actions on written contracts.

12. INTEREST—*under R. S. ch. 74, § 2.* In determining interest under R. S. ch. 74, § 2, it is improper to compound it.

13. INTEREST—*money due for royalties.* R. S. ch. 74, § 2, applies to money due on a contract to pay royalties on a book.

14. INTEREST—*when offer to pay stops interest.* In order that an *offer* to pay a debt may have the effect of stopping interest, it must not be coupled with conditions.

15. COSTS—*when divided.* Where the decree is affirmed in part and reversed in part, with directions to disallow certain items, the appellant may be ordered to pay three-fourths and appellee one-fourth of the costs in the court of review.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed in part, reversed in part and remanded with directions. Opinion filed March 26, 1913.

S. E. LAMBERT, for appellant.

ARTHUR HUMPHREY and CHARLES S. MCILVAINE, for appellee.

MR. JUSTICE GRAVES delivered the opinion of the court.

Appellee, the author of ''A Brief History of the American People,'' sometimes known as the ''Model History,'' designed for use in schools, and who was the owner of the copyright thereon, in January, 1879, entered into the following contract with George Sherwood & Company, viz.:

''We hereby agree in consideration of the exclusive right to publish and sell a certain work entitled, 'A Brief History of the American People,' by Edward Taylor, to pay to the said Edward Taylor or his as-

signs the sum of four cents (4 cents) on each and every copy sold by us.

"It being provided, however, that no copyright or royalty shall be paid on said book or any of said books that are given away; or supplied at specially reduced rates for first introduction into schools.

"Copyright payments are to be made semi-annually as follows:

"The account of sales are to be made up to the first of January and first of July of each and every year and the amount found due the said Taylor as per this agreement is to be paid respectively on the first day of May and first day of November of each and every year during the continuance of the copyright. That is to say, the amount found due for sales to Jany. first shall be paid May first following and the amount found due July first shall be paid first of November following.

"Chicago, January 23, 1879.

"GEO. SHERWOOD & CO.

"I accept from George Sherwood & Company the above mentioned copyright, under the conditions specified, as an equitable compensation to me for their use of my late work, 'A Brief History of the American People'. I hereby confirm this contract, and make it binding upon myself, my heirs, and my assigns.

"EDWARD TAYLOR.

"Gifford, Iowa, January 27, 1879."

Under this contract the work was published and sold by Sherwood & Company until sometime in 1895, when appellant, Scott, Foresman & Company, purchased the business of Sherwood & Company and took over the above contract with the consent of appellee, and assumed all the obligations of Sherwood & Company thereunder, and from then until February 17, 1897, published and sold the work and reported to and paid appellee in accordance with the terms of that contract. On the last named date appellee and appellant, through E. H. Scott, its president and general manager, entered into a verbal agreement at Indianapolis, Indiana, by which the parties attempted to modify the

terms of the former agreement in certain particulars.
The terms of this verbal agreement, as found and de-
clared by the court, were "that the royalty on said
books in the future should be 5% of the selling price."
At the time this verbal agreement was entered into the
book had become practically a dead proposition, the
sales during the year previous having netted appellee
little or nothing. The new or verbal agreement was
entered into for the purpose of making the royalties
proportionate to the selling price in case the selling
price should be lowered, in order to obtain a market,
and there is some evidence tending to show that appel-
land had in mind at that time competing for the adop-
tion in the schools of the State of Kansas of the book
under a uniform school text book law then being con-
sidered by the legislature of that state. At all events
the contemplated law was passed in the State of Kansas
and the book was adopted there for a period of five
years beginning with the 1st day of September, 1897.
During the five years next following September 1, 1897,
something more than 91,000 copies of the work were
sold and something more than 31,000 copies were ex-
changed in the State of Kansas, and outside of that
state 567 copies were sold. Those disposed of in Kan-
sas brought fifty cents each for those sold outright
and twenty-five cents each and an old book for each one
exchanged. Those sold outside of Kansas brought
eighty cents each.

After the verbal agreement was entered into at In-
dianapolis a controversy arose over what its terms
were. The discussion concerning that agreement was
carried on by correspondence between the parties. In
this correspondence both appellant and appellee, not
only recognize the oral agreement as having been
made, and express a willingness to be bound by what
they respectively claimed its terms were, but insisted
that the other should do the same. The bone of con-
tention between them was not whether the Indian-
apolis verbal contract was made, or whether it was

binding, but was concerning what, in fact, the agreement was. The parties later and on June 28, 1898, signed the following written agreement to submit to arbitrators for determination the differences between them:

"A difference having arisen between the undersigned regarding, first, the amount of royalty to be paid on each copy of the Model United States History, second, the payment of royalty on the exchanges of books sold in the State of Kansas, and, third, the payment of Mr. Prentiss for writing the supplement on the History of Kansas,—it is hereby agreed that said differences shall be submitted to arbitrators who shall decide between the parties hereto, on the points mentioned above. In making their decision the arbitrators shall be guided solely by a contract made in writing between Geo. Sherwood & Company, and Edward Taylor, in 1879; and by an oral agreement subsequent to this written agreement, which oral agreement was made at Indianapolis in February, 1897, between E. H. Scott, for Scott, Foresman & Company, and Edward Taylor. The substance of such agreement is evidenced by the correspondence of the parties hereto."

Evidence was presented to the arbitrators chosen under the agreement and they, on July 21, 1899, made a report containing the following findings:

"* * * First: In accordance with the spirit of said contract and subsequent verbal agreement, said Edward Taylor is entitled to a royalty of five per cent on all copies of 'The Model United States History', sold at the full contract price in the State of Kansas. (It being understood said price is fifty-five cents per copy.)

"Second: In the matter of exchanges, we find that said Edward Taylor is entitled to five per cent royalty on all cash received for sale of new books, together with the amount received from the sale of old books, after deducting all expenses of handling said old books.

"Third: We find that the expense incurred for writing the supplement of the 'History of Kansas,' should not be borne by said Edward Taylor. * * *"

Appellee refused to abide by the first and second findings of the arbitrators, because these findings did not follow the arbitration agreement in that the first finding was limited to sales in Kansas, when it should have covered the whole United States, and the second finding covered the whole United States, when it should have been limited to the State of Kansas. Appellant made reports and undertook to settle with and pay to appellee royalties due in accord with the above findings of the arbitrators, while appellee as consistently refused to accept such payments and adjustments, claiming he was entitled to four cents royalty on each copy of the book sold instead of 5% per cent. on the selling price. This continued until May 31, 1905, when appellee filed the bill in this case.

The bill sets up the original contract with Sherwood & Company, its assignment to Scott, Foresman & Company, the Indianapolis verbal agreement, which it is averred was obtained by fraud and misrepresentations, and by an amendment filed later that the Indianapolis agreement was and is void as within the statute of frauds of the State of Indiana. It is further averred in the original bill that appellant published and sold large numbers of the book under the terms of the original contract, but that it has not truly accounted for or paid the royalties due under the Sherwood contract, or kept correct books of account thereof; that appellee is entitled to four cents on each copy of the work sold by appellant, including those sold in Kansas and paid for in cash, or part in cash and part in other books; that the differences between the parties had been submitted to arbitration, but that the finding and award of the arbitrators was void, and prays for discovery and accounting; that the Indianapolis verbal contract be held void; that the first and second finding of the arbitrators be held void; that appellant be required to pay the amount found due on an accounting and for general relief.

Appellant's answer admits liability under the Sher-

wood contract, as amended by the Indianapolis verbal agreement, and that it has published and sold numerous volumes of the history under the terms thereof as so amended; denies failure to keep accurate accounts; denies failure to truly account to appellee, and sets out a tabulated account, including books sold and exchanged and amount received from the old books, from January 1, 1897, to August 1, 1902; avers offers to pay and readiness to pay all royalties due appellee, and the payment to appellee of all of such royalties as he would receive; admits the making of the Indianapolis verbal agreement and denies fraud in procuring it; admits the submission of differences between the parties to arbitration and the finding of the arbitrators and denies that it is void in any particular, but avers that it is final and binding on the parties; admits liability to appellee on the basis of the finding of the arbitrators.

Issues being joined, the cause was by the agreement of the parties referred to a master in chancery to take proofs and report the same, together with his conclusions of law and fact. After the cause was referred to the master appellant obtained leave to file and did file an amendment to its answer, in which laches and the statute of limitation are set up as a defense.

The master in his report finds that the Sherwood contract was made as averred in the bill and that appellant took over that contract and published and sold books under it until February 17, 1897, when the parties made or attempted to make a verbal amendment thereto, but that there is no evidence of any fraud having been practiced by either party in procuring the Indianapolis agreement, but that it is void under the statute of frauds of the State of Indiana, and that the original contract is still in force, and that appellant is bound to pay appellee four cents royalty for each copy of the book sold by it, and interest thereon from the time it became due, regardless of how it received its pay therefor, or whether it received its

pay or not; that the court has jurisdiction; that the equities are with the complainant, and that he is entitled to the relief prayed for. The master then states an account in which he found appellee is entitled to receive from appellant $7,145.98, including interest on the deferred payments, to July 1, 1908, and finds that appellee is entitled to interest thereon at five per cent. per annum from July 1, 1908.

Objections to this report was filed by both parties, all of which were overruled by the master. These objections being ordered to stand as exceptions to the master's report were considered by the chancellor and were all overruled. The chancellor, on May 2, 1910, entered a decree in which it is found that there is no controversy concerning the original contract; that it is in full force and binding on both parties to this suit; that on February 17, 1897, at Indianapolis, Indiana, the parties "made or attempted to make a verbal amendment to" the original contract; "and that the parties then agreed verbally that the royalty on said books in the future should be five per cent of the selling price;" that the verbal agreement was never reduced to writing, nor was there any memoranda thereof signed by the party to be charged; that it was understood that it should remain in force more than one year and that it would require more than one year to perform it, and that it is void under the statute of frauds of Indiana, where it was entered into; that the first and second finding of the arbitrators are void and that the third is valid; that appellant must account for and pay to appellee four cents on each copy of the book sold by it, irrespective of how it received pay for it, or whether it received its pay or not, and that interest should be paid on the various amounts of royalties from the time the same became due to the date of payment; that the amount due, including interest, is $7,801.03; that the court had jurisdiction and that complainant is entitled to the relief prayed for in the bill. A money judgment was then entered against ap-

pellant for the amount found due and for costs. Appellant excepted to each action of the court in overruling its exception to the master's report and in making said findings, "except said finding that a verbal agreement was made in February, 1897; to which finding said defendant (appellant) does not object." Twenty-eight assignments of error are filed by appellant. No cross-errors are assigned.

The bill seeks discovery and an accounting and presents a proper case for equitable relief. Whether or not the Sherwood contract would have been held bad for want of mutuality in a proceeding by appellee to compel Sherwood & Company or their successors to publish and market the books therein mentioned, or to do so within any specific time, or in any specific manner, it is clearly sufficient to base an action for the recovery of the stipulated royalties on books actually published and sold under the rights conferred by it. Plumb v. Campbell, 129 Ill. 101.

It is often true that a contract that is not enforcible while it remains executory, is enforcible against one who has availed himself of the rights and benefits secured to him by it. A party to a contract may not perform it, so far as it is beneficial to him, and hide behind its want of mutuality, when called upon to perform the part of it that is beneficial to the other party. Forthman v. Deters, 206 Ill. 159; Kadish v. Garden City E. L. & B. Ass'n, 151 Ill. 531; Evans v. Moore, 247 Ill. 60. The evidence shows that appellant has availed itself of the rights secured to it by this contract by publishing and disposing of nearly 125,000 volumes of the work at a very considerable profit. It is now estopped from saying it is not bound by it to pay appellee the agreed royalty, because perchance appellee might not have been able to compel it to publish and sell the books.

The chancellor found, and the evidence warrants the finding, that the parties entered into an agreement at Indianapolis, Indiana, by which agreement, as ascer-

tained and declared, the royalties to be paid were thereafter to be on a basis of five per cent. of the selling price of the books, whereas by the Sherwood contract the royalties to be paid were fixed at the flat rate of four cents per copy of the book sold. This agreement the court found was and is void under the statute of frauds of Indiana, because it was not in writing and was not to be performed within a year. The clause of the Indiana statutes in question is as follows:

"1. No action shall be brought in the following cases:

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

"*Fifth:* Upon any agreement that is not to be performed within one year from the making thereof.

"Unless the promise, contract or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized; excepting, however, leases not exceeding the term of three years."

It has frequently been decided by the courts of Indiana, and has become the settled law of that state, that in order to bring a contract within the provisions of the statute above quoted, it must affirmatively appear from the terms of the contract itself that its stipulations are not to be performed within a year. Durham v. Hiatt, 127 Ind. 514; Shumate v. Farlow, 125 Ind. 359; Wilson v. Ray, 13 Ind. 1. The same principle has been announced in the Appellate Court of this state. First Presb. Church of Davenport v. Swanson, 100 Ill. App. 39. Of course, it is not necessary that the contract in express terms shall say "this contract shall not be performed within a year," or equivalent words, but it is necessary that from the express terms of the contract it shall appear that it is not to be performed within the year. Neither the real intention or expectation of the parties that the contract would or would not be performed within a year, or the probabilities that it would or would not, or the fact that

it was or was not so performed, or any other matter, fact or circumstance not gathered from a reasonable interpretation of the express terms of the contract can be considered in determining whether the contract is so to be performed. Warner v. Texas & P. R. Co., 164 U. S. 418; Blair Town Lot & Land Co. v. Walker, 39 Iowa, 406.

The Indianapolis contract was an oral contract. Its terms were the same as the original written contract with the exception of the rate of royalty to be paid, which was changed from four cents per copy of the book sold to five per cent. of the proceeds of the sale. By the terms of the original contract, which became the terms of the Indianapolis contract, it was provided that semi-annual reports should be made by appellant on the first day of January and the first day of July and that semi-annual settlements of the royalty account should be made by appellant on the first day of May and the first day of November of "each and every year." Plainly, by its terms, this contract could not be performed in a single year. It was clearly void under the terms of the statute quoted. True, several letters were written by each of the parties to the other, in which each insisted that a contract had been there made, but the parties differed widely as to what the terms of that contract were. While any writing, signed by the party to be charged, definitely stating the terms of a contract, or from which those terms can be fairly inferred, will be sufficient to take a contract out of the operation of the statute quoted, the terms so stated or inferred must be the terms mutually agreed to by the parties. The letters above referred to fail in that regard, and really amount to nothing more than reiterations of the claims of the respective parties concerning those terms, to which the other party does not assent. As to the fact that under some conditions the royalties were to be five per cent. on the proceeds instead of four cents on each copy of the book sold, the parties do agree, but as to

what those conditions were, they disagree, so that, as to those conditions at least, the contract remains a parol contract, and it is well settled that when a contract is partly in writing and partly in parol, it will be treated as a parol contract in determining whether it is within the inhibition of the statute of frauds. Wright v. Raftree, 181 Ill. 464; Cloud v. Greasley, 125 Ill. 313; Farwell v. Lowther, 18 Ill. 252; Elwell v. Hicks, 238 Ill. 170; Hartenbower v. Uden, 242 Ill. 434.

As a general rule, an award of arbitrators, in order to be binding, must follow the contract of submission as made by the parties. It is not for a board of arbitrators to change the terms of the submission or to determine any matter not therein contained. Their sole authority is the contract of submission. If the award is broader or narrower than the submission, the whole award is void. Buntain v. Curtis, 27 Ill. 374; Stearns v. Cope, 109 Ill. 340; Tucker v. Page, 69 Ill. 179; Whetstone v. Thomas, 25 Ill. 361; Alfred v. Kankakee & S. W. R. Co., 92 Ill. 609; McDonald v. Bacon, 4 Ill. (3 Scam.) 428; Ingraham v. Whitmore, 75 Ill. 24; Busse v. Agnew, 10 Ill. App. 527; Sherfy v. Graham, 72 Ill. 158; Steere v. Brownell, 113 Ill. 415; McCullough v. McCullough, 12 Ind. 487. The submission and award are above set out. In at least two important particulars the award does not follow the submission. The first question submitted called for an award and determination as to "the amount of royalty to be paid on each copy of the 'Model United States History.'" The board of arbitrators limited its findings to the amount of such royalty to be paid on all books sold in the State of Kansas. This finding was not as broad as the submission which was not limited to the State of Kansas. The second submission called for a determination as to "the payment of royalty on the exchanges of books sold in the State of Kansas." The award in this respect was not limited to the State of Kansas and was, therefore, broader than the submission. For these reasons, under the authorities cited,

the award of the arbitrators referred to in this case was not binding.

In order to accomplish the sale of the book in the State of Kansas, it became necessary to have added to it as originally published a supplemental history of the state. This appellant procured to be done by one Prentiss, and paid him for it. There was at one time some contention on the part of appellant that appellee should stand this item of expense, but the evidence in the record would not warrant a holding that he was liable therefor, and the claim was properly disallowed by the court.

In the account, as stated by the master in chancery and made the basis of the decree under consideration, appellant is charged with $8.64 for royalties due prior to July 1, 1897, and with $4.76 for interest thereon. Appellee, in his testimony, says he had received all royalties due him up to that date on the regular edition, and no claim is made that any of the Kansas edition were sold prior to that date. The master's findings and the decree are, therefore, erroneous as to the items antedating July 1, 1897.

From a careful examination of the record and the questions of law involved we conclude that the original written Sherwood agreement was in force and binding on the parties to this suit up to the time the last item of royalties shown in the master's report became due.

This suit is based on the original Sherwood written contract and the contentions of appellant that the five year statute of limitation barred a recovery for all items of royalties accruing prior to May 31, 1900, and that appellee is entitled to no interest on delayed payments are not sound. The five year statute of limitations has no application to actions on written contracts, and as to the question of interest, section 2 of Chapter 74, R. S., provides, in part, as follows:

"Creditors shall be allowed interest at the rate of 5 per centum per annum for all moneys after they be-

come due on any bond, bill, promissory note, or other instrument of writing * * *."

It would seem that this statute is too plain to need construction. It has been held to apply to a great variety of contracts. McDonald v. Patterson & Co., 186 Ill. 381; Keeler v. Herr, 157 Ill. 57; Massachusetts Mut. Life Ins. Co. v. Robinson, 98 Ill. 324; Heissler v. Stose, 131 Ill. 393; Supreme Lodge A. O. U. W. v. Zuhlke, 129 Ill. 298; Knickerbocker Ins. Co. v. Gould, 80 Ill. 388; Morris v. Wibaux, 159 Ill. 627. The Sherwood contract provides for the payments on May 1st of each year of the royalties on books sold up to January 1st next previous, and for the payment on November 1st of each year of the royalties due July 1st next previous. Beginning with the sales made after July 1, 1897, royalties became due at various times before this suit was commenced, aggregating $4,957.80, figured on the basis of the Sherwood contract, that have not been paid appellee, which he is entitled to receive and on which he is entitled to five per cent. interest from the time each item thereof became due to the date the final decree is entered in this case. The master computed the interest on the basis of the Sherwood contracts down to July 1, 1908, and added the interest so computed to the amount of the royalties, and found that on that date there was due for principal and interest $7,145.98. The decree based on this report was entered May 2, 1910, in which the court has undertaken to compute interest to the date of the decree, and in so doing has computed interest on the interest figured by the master, or, in other words, has compounded the interest. Of course, that is incorrect. The interest should have been computed on each item of royalty from the time it became due to the date of the decree. The interest found by the master to be due up to July 1, 1908, was $2,179.54. The item of interest improperly allowed by the court on this amount was approximately $200.

The claim of appellant that it should not be re-

quired to pay interest, because it had offered to pay the royalties from time to time, as the same accrued, is without force.    True, it did offer to settle and pay royalties at the rate of five per cent. of the proceeds of books sold on the basis of the finding of the arbitrators, but in each instance such offers were coupled with the condition that the amount offered should be accepted in full for all royalties due on the various sales to which such offers referred.    In order to have the effect of stopping interest, offers to pay must not be coupled with such conditions.

The decree of the Circuit Court is, therefore, reversed as to the items of royalties accruing on sales made prior to July 1, 1897, and the item of interest computed on the interest found by the master to be due up to July 1, 1908, and the cause is remanded with directions to the Circuit Court to restate the account, and in so doing to disallow the items of royalties on books sold prior to July 1, 1897, and to compute interest, without annual or other rests, at the rate of five per cent. per annum on the various items of royalties found by the master to be due on sales made after July 1, 1897, from the dates the several items became due to the date the final decree shall be entered, and to enter a decree accordingly.    In all other respects the decree is affirmed.

Appellant to pay three-fourths and appellee one-fourth of the costs in this court.

*Decree affirmed in part; reversed in part and remanded with directions.*